# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

Joseph W. Moreno )
_____ )
_____ )
_____ )
(Name of the plaintiff or plaintiffs) )
           v. )
Chase )
_____ )
_____ )
_____ )
(Name of the defendant or defendants) )

14CV4059
CIV  JUDGE ASPEN
MAG. JUDGE MARTIN

NO._____

RECEIVED
6-2-14
JUN X 2 2014
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1.  This is an action for employment discrimination.

2.  The plaintiff is Joseph W. Moreno of the county of Cook in the state of Illinois.

3.  The defendant is Chase, whose street address is 2500 Westfield Drive / Deardorne Monroe Chicago
(city) Elgin (county) Kane Cook (state) IL (ZIP) 60134
(Defendant's telephone number) (____) _____

4.  The plaintiff sought employment or was employed by the defendant at (street address)
2500 Westfield Drive (city) Elgin
(county) Kane (state) Illinois (ZIP code) 60134

5. The plaintiff [**check one box**]

(a) ☐ was denied employment by the defendant.

(b) ☐ was hired and is still employed by the defendant.

(c) ☒ was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about,

(month) _July_ , (day) _12th_ , (year) _2012_ .

7.1 **_(Choose paragraph 7.1 or 7.2, do not complete both.)_**

    (a) The defendant is not a federal governmental agency, and the plaintiff [*check*

    *one box*] ☐ *has not*     filed a charge or charges against the defendant
             ☒ *has*

asserting the acts of discrimination indicated in this complaint with any of the following

government agencies:

    (i)      ☒ the United States Equal Employment Opportunity Commission, on or about

        (month) _August_ (day) _1st_ (year) _2012_ .

    (ii)     ☒ the Illinois Department of Human Rights, on or about

        (month) _November_ (day) _10_ (year) _2012_ .

  (b) If charges *were* filed with an agency indicated above, a copy of the charge is

attached. ☒ YES.    ☐ NO, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois

Department of Human Rights to cross-file with the other agency all charges received. The

plaintiff has no reason to believe that this policy was not followed in this case.

7.2     The defendant is a federal governmental agency, and

    (a) the plaintiff previously filed a Complaint of Employment Discrimination with the

    defendant asserting the acts of discrimination indicated in this court complaint.

☒ Yes (month) *November* (day) *10* (year) *2012*

☐ No, did not file Complaint of Employment Discrimination

(b) The plaintiff received a Final Agency Decision on (month) *Feb* (day) *25* (year) *2014*.

(c) Attached is a copy of the

(i) Complaint of Employment Discrimination,

☒ YES    ☐ NO, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☒ YES    ☐ NO, but a copy will be filed within 14 days.

8. *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐ the United States Equal Employment Opportunity Commission has not issued a *Notice of Right to Sue.*

(b) ☐ the United States Equal Employment Opportunity Commission has issued a *Notice of Right to Sue*, which was received by the plaintiff on (month)_____ (day)_____ (year)_____ a copy of which *Notice* is attached to this complaint.

9. The defendant discriminated against the plaintiff because of the plaintiff's [*check only those that apply*]:

(a) ☐ Age (Age Discrimination Employment Act).

(b) ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

3

(c) ☒ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12. The defendant [*check only those that apply*]

(a) ☐ failed to hire the plaintiff.

(b) ☒ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☒ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐ failed to stop harassment;

(g) ☐ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☐ other (specify):_____

_____

13. The facts supporting the plaintiff's claim of discrimination are as follows:

After numerous requests to accomodate my disability (I have bipolar) the management at Chase bank proceeded to set me up for failure and did nothing but allowed me to be set-up for failure and on 7/12/2014 fired me, because they wanted to.

14. **[*AGE DISCRIMINATION ONLY*]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☐ YES ☒ NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐ Direct the defendant to hire the plaintiff.

(b) ☐ Direct the defendant to re-employ the plaintiff.

(c) ☐ Direct the defendant to promote the plaintiff.

(d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☒ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☒ Direct the defendant to (specify): be accomodated for one year's severance pay

5

_____

_____

_____

_____

(g) [X]    If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) [ ]    Grant such other relief as the Court may find appropriate.

(Plaintiff's signature)

*Joseph W. Moreno*

(Plaintiff's name)

*Joseph Wayne Moreno*

(Plaintiff's street address)

*5105 W. Addison St. 3W*

*Chicago, IL 60641*

(City) *Chicago* (State) *IL* (ZIP) *60641*

(Plaintiff's telephone number) *(312) 560-2298*

Date: *6/2/2014*

6

# Joseph W. Moreno

5105 W. Addison St.
Chicago, IL 60641
312-560-2298,  joejoemoreno@netzero.com

## SUMMARY OF QUALIFICATIONS

- Excellent phone and interpersonal skills
- Over twenty years of experience in customer service
- Four years of cash-handling experience
- Certificates of Achievement in Microsoft Word II, Power point, Excel, Access, Outlook
- Bilingual in Spanish and English

## RELEVANT EXPERIENCE

Chase Bank
**2002-2012**                                                                            Elgin, IL
*Customer Service Representative/Retention Specialist*
- Provided excellent customer service to Chase clients via phone as Customer Service I, II, and III
- Won first place in sales by selling $1.5 million in one business quarter
- Communicated banking information as well as changes in policy to clients
- Provided great banking support and successful retention of clients
- Gained thorough knowledge of retail banking and adapted quickly to company changes from customer service to litigation
- Over sought a team of ten individuals while management was not present

Chicago Mercantile Exchange
**1992-2002**                                                                            Chicago, IL
*Customer Service Clerk*
- Assisted traders and runners with daily organizational and priority tasks
- Protected valuables and provided security
- Delegated to Employee Training and consulted with management regarding employee progress

Oh Yes Chicago!
**1990-1992**
*Customer Service Representative*
- Sold, developed and prioritized Chicago stylized products to conventioneers from Navy Pier
- Managed a kiosk that sold t-shirts and other apparel

ABC TV WLS Channel 7
**1989-1990**                                                                            Chicago, IL
*Creative Services/ Promotions Intern*
- Assisted in writing copy for promotions while answering phones and faxing documents
- Wrote short news and sports presentations as newscast copy for Channel 7

## EDUCATION

Columbia College Chicago          **Bachelor of Arts, Concentration in Advertising and Media**
Gordon Technical High School      **High School Diploma**                    Chicago, IL

## VOLUNTEER EXPERIENCE

**2000-current**
Volunteered at Holy Name Cathedral as fundraiser for CFN special events          Chicago, IL
**2013-current**
Volunteered as board member at Nation Alliance on Mental Illness                  Chicago, IL

# CERTIFICATION OF BIRTH

BIRTH NUMBER:     112-59-6061595

NAME:  JOSEPH WAYNE MORENO

DATE OF BIRTH:  JULY 5, 1959          SEX:  MALE

PLACE OF BIRTH:  CHICAGO, COOK COUNTY, ILLINOIS

MAIDEN NAME OF MOTHER:  ARGELIA  RIVERA

PLACE OF BIRTH OF MOTHER:  PUERTO RICO          AGE:  25

NAME OF FATHER:  JOSE ANTHONY MORENO

PLACE OF BIRTH OF FATHER:  PUERTO RICO          AGE:  35

DATE FILED:  JULY 10, 1959          DATE ISSUED:  NOVEMBER 30, 2012

This is to certify that this is a true and correct abstract from the official record
filed with the Illinois Department of Public Health.

2302732



County of Cook
State of Illinois
COUNTY BUILDING
CHICAGO, ILLINOIS 60602-1304

**Office of County Clerk**
**David Orr**



DAVID ORR     COUNTY CLERK

CL91



This copy is not valid unless displaying embossed seals of Cook County and County Clerk signature.

VOID WITHOUT WATERMARK OR IF ALTERED OR ERASED

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF:

JOSEPH W. MORENO,                    )
                                     )
                COMPLAINANT,         )
                                     )
AND                                  )
                                     )
JP MORGAN CHASE,                     )
                                     )
                                     )
                RESPONDENT.          )

CHARGE NO.  2013CF1251
EEOC NO.    21BA30326

**NOTICE OF DISMISSAL**
**FOR LACK OF SUBSTANTIAL EVIDENCE**

Arthur R. Ehrlich                    Linda Brinker, Executive Director
Goldman & Erlich                     JP Morgan Chase and Co.
20 S. Clark Street                   10 S. Dearborn
Suite 500                            Chicago, IL  60603
Chicago, IL  60603


DATE OF DISMISSAL:  February 25, 2014

1.    YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation
      report, the DEPARTMENT OF HUMAN RIGHTS (DHR) has determined that
      there is NOT substantial evidence to support the allegations of the charge(s).
      Accordingly, pursuant to Section 7A-102(D) of the Human Rights Act (775 ILCS
      5/1-101 et. seq.) and its Rules and Regulations (56 Ill. Adm. Code. Chapter II,
      Section 2520.560), the charge is HEREBY DISMISSED.

2.    If Complainant disagrees with this action, Complainant may:

      a) Seek review of this dismissal before the Illinois Human Rights Commission,
         100 West Randolph Street, Suite 5-100, Chicago, Illinois, 60601, by filing a
         "Request for Review" with the Commission by the request for review filing
         date below.  Respondent will be notified by the Human Rights Commission if
         a Request for Review is filed.

      **REQUEST FOR REVIEW FILING DEADLINE DATE:  June 2, 2014**

      Or,

      b) Commence a civil action in the appropriate state circuit court within ninety
         (90) days after receipt of this Notice.  A complaint should be filed in the circuit
         court in the county where the civil rights violation was allegedly committed.

**Page 2**
**Notice of Dismissal for Lack of Substantial Evidence**
**2013CF1251**

> **If you intend to exhaust your State remedies, please notify the** Equal **Employment Opportunity Commission (EEOC) immediately. The** EEOC **generally adopts the Department's findings.** The Appellate Courts in <u>Watkins v. Office of the State Public Defender</u>, ___ Ill.App.3d ____, 976 N.E.2d 387 (1st Dist. 2012) and <u>Lynch v. Department of Transportation,</u> ___ Ill.App.3d ___, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Illinois Human Rights Act ("IHRA") against the State of Illinois **in the Illinois Circuit Court** are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.

**Please note that the Department cannot provide any legal advice or assistance. Please contact legal counsel, your city clerk, or your county clerk with any questions.**

3. Complainant is hereby notified that the charge(s) will be dismissed with prejudice and with no right to further proceed if a timely request for review is not filed with the Commission, or a written complaint with the appropriate circuit court.

4. If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC). If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal. Please note that in order to receive such a review, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice, or if a request for review is filed with the Human Rights Commission, within fifteen days of the Human Rights Commission's final order. Any request filed prior to your receipt of a final notice WILL NOT BE HONORED. Send your request for a Substantial Weight Review to EEOC, 500 West Madison Street, Suite 2000, Chicago, Illinois 60661. Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

**PLEASE NOTE: BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT. IF AN APPPOINTMENT IS REQUIRED, CALL 312-869-8000 OR 1-800-669-4000.**

DEPARTMENT OF HUMAN RIGHTS

HB1509/HB59
NOD/LSE
12/10

STATE OF ILLINOIS
HUMAN RIGHTS COMMISSION

IN THE MATTER OF:                    )
                                     )
JOSEPH W. MORENO,                    )
                                     )
                    COMPLAINANT,     )          CHARGE NO.  2013CF1251
                                     )          EEOC NO.   21BA30326
AND                                  )
                                     )
JP MORGAN CHASE,                     )
                                     )
                                     )
                    RESPONDENT.      )

## REQUEST FOR REVIEW

Arthur R. Ehrlich                           Linda Brinker, Executive Director
Goldman & Erlich                            JP Morgan Chase and Co.
20 S. Clark Street                          10 S. Dearborn
Suite 500                                   Chicago, IL  60603
Chicago, IL  60603

TO:  Arthur R. Ehrlich

DATE:  February 25, 2014

REQUEST FOR REVIEW FILING DEADLINE DATE:  June 2, 2014

        I hereby request that the Department of Human Rights' (DHR) dismissal of the charge be reviewed by the Illinois Human Rights Commission.

Complainant's Current Address (please print clearly):

_____Apt/Unit #_____

City_____ State_____Zip_____Phone (____)_____

**Page 2**
**REQUEST FOR REVIEW**
**2013CF1251**

## TO REQUEST INVESTIGATION FILE:

The Department's investigation file may be reviewed or copied upon request once the Department's investigation is completed. The Department is not responsible for copy service fees. **A minimum of 3 business days' notice is required.** Call (312) 814-6262 to make arrangements.

## REQUEST FOR REVIEW INSTRUCTIONS:

IN THE SPACE PROVIDED BELOW, YOU <u>MUST</u> LIST AND DESCRIBE THE SPECIFIC REASONS THAT THE CHARGE SHOULD NOT HAVE BEEN DISMISSED. If applicable, you may write on the back of this form or attach additional information or documents, which support your Request for Review. You may review your investigation file, to help you prepare your request by calling 312-814-6262 or 217-785-5100.

_____

 

 

 

_____          _____
           SIGNATURE                                              DATE

**YOU MUST ENCLOSE THE ORIGINAL AND THREE COPIES, INCLUDING SUPPORTING DOCUMENTS, OF YOUR ENTIRE REQUEST AND SIGN, DATE AND HAVE THIS FORM POSTMARKED OR HAND DELIVERED BY THE FILING DEADLINE DATE ABOVE, TO:**

Illinois Human Rights Commission, 100 West Randolph Street, Suite 5-100, Chicago, IL 60601.

**Please note that pursuant to Section 5300.410 of the Commission's Procedural Rules, except by permission of the Commission, the request, argument and supporting materials shall not exceed 30 pages.**

**Further, note that pursuant to *56 Ill. Admin. Code § 5300.40(b)* of the Commission's Procedural Rules, all arguments in support of the Request for Review must be written on 8 ½ x 11 paper. Any argument submitted on non-conforming paper (such as a "post-it" note) will not be considered part of the Request for Review, and will be disregarded by the Commission.**

**THIS FORM MAY NOT BE SENT VIA TELEFAX.**
HB1509/HB59 HRC R/R 01/14

# STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
### INVESTIGATION REPORT

| | | | |
|---|---|---|---|
| **Complainant:** | Joseph W. Moreno | **IDHR No.:** | 2013CF1251 |
| **Respondent:** | JP Morgan Chase | **EEOC No.:** | 21BA30326 |

**Investigator:** ENG          **Supervisor:** CBD/*CBD* .          **Date:** February 11, 2014

| **Issue/Basis:** | | **Finding:** | |
|---|---|---|---|
| A. | Failure to accommodate/ Disability, Manic Depression | A. | Lack of Substantial Evidence |
| B. | Discharge/ Disability, Manic Depression | B. | Lack of Substantial Evidence |

**Jurisdiction:**

| Alleged violations: | | A. | Beginning of July 2012 |
|---|---|---|---|
| | | B. | July 12, 2012 |
| Charge filed: | | | November 5, 2012 |
| Charge perfected: | | | November 5, 2012 |
| Amendments: | | | N/A |
| Number of employees: | | | 2,394 |

**Verified Response (Group Exhibit A):**

| Due: | January 26, 2012 | |
|---|---|---|
| Received: | March 15, 2013 | |
| Timely: | No | If untimely, good cause shown: Yes |

**Employment Data:**

Respondent's 2012 EEO-4 Report (**Exhibit B**) indicated that Respondent employs 2,394 employees of whom 1,907 individuals were Administrative Support staff which Complainant's position fell under. Respondent does not track disabilities of individuals.

**Uncontested Facts:**

1. Respondent is one of the oldest financial institutions in the United States.

2. Complainant began working for Respondent in 2002.

3. In July 2012, Complainant did not submit an accommodation request in writing.

4. Complainant did not have any work restrictions related to a disability at any time during his employment.

5. On June 19, 2010, Complainant received a commitment letter regarding time management and decreasing use of exempt time (**Exhibit G**).

6. On June 30, 2010, Complainant received a written warning for accessing his personal records through Lexis/ Nexis website in violation of company policy (**Exhibit H**).

7.      On December 11, 2010, Complainant received a documented discussion for BLP timeframes and charge offs including dated that payments need to post (**Exhibit I**).

8.      On December 31, 2010, Complainant's 2010 annual performance rated him as "needs improvement" (**Exhibit J**).

9.      On February2, 2011, Complainant received a documented discussion regarding compliance violations (**Exhibit K**).

10.     On August 86, 2011, Complainant received a performance improvement plan to help him perform satisfactorily (**Exhibit M**).

11.     On December 12, 2011, Complainant received a focus plan to ensure he verified card member identification on inbound calls before beginning calls (**Exhibit O**).

12.     On December 31, 2011, Complainant's 2011 annual performance review, he was rated as "needs improvement" (**Exhibit Q**).

13.     On January 26, 2012, Complainant was issued a performance improvement plan to help him perform better (**Exhibit S**).

14.     On February 6, 2012, Complainant received a written warning for policy and procedure/ regulatory compliance violations (**Exhibit T**).

15.     On June 14, 2012, Complainant received a written warning for numerous regulatory compliance violations (**Exhibit Y**).

## Complainant's Allegations-Count A:

Complainant, a former Customer Support Advisor, alleges that in the first week of July 2012, Respondent failed to accommodate him. Complainant alleges that Respondent hired him in 2002 and that he performed his duties in a satisfactory manner. Complainant alleges that in the first week of July 2012, he informed Respondent that he had a disability of Manic Depression. Complainant alleges that he requested to be transferred to a different department or position that would not be as fast paced and would be less mentally strenuous. Complainant also requested additional training.

## Respondent's Defenses-Count A:

Respondent's articulated legitimate non-discriminatory reason for not accommodating Complainant on or about the first week of July 2012, is that he never provided medical information from his health care providers to request that he be moved to a different position for medical reasons. Respondent admits that Complainant began working for Respondent in 2002. Respondent denies that Complainant performed all his duties in a satisfactory manner. Respondent denies that Complainant suffers from a disability, manic depression.

## Investigation Summary-Count A:

### A.    Complainant's Evidence.

1.    Complainant stated he was diagnosed with Manic Depression in 1987. He stated that he informed his supervisor Degauld Seydone ("Seydone") (non-disabled) Team of this disability, approximately in June 2012.

2.    Complainant stated that in 2001 he had been issued a copy of Respondent's employee handbook.

3.    Complainant stated he did not submit medical documentation regarding his disability to Seydone, rather he stated Respondent already had his medical documentation on file. He stated he had told DMS, coworkers, and managers about his disability. He stated he informed a Team Lead, Lory Ellis, about his disability in October 2009.

4.    Complainant stated he provided medical documentation to Respondent when he applied for medical leaves. He stated he took a leave in 2008 and submitted medical documents regarding his diagnosis to team leaders. Complainant stated he has taken three leaves while employed with Respondent. He stated he took his leaves in 2004, 2006 and 2010. He stated the reasons for his leaves were because his diagnosis started to become present and some of his symptoms were unmanageable.

5.    Complainant stated that in June 2012 or earlier in May 2012 he requested an accommodation. He stated he made his request by speaking with his supervisor, Seydone regarding the problem he was having because of his disability. Seydone told Complainant that he didn't want to hear about it. Complainant stated that Seydone did not refer him to DMS. He stated he was already on DMS. He stated he requested from Seydone an accommodation by asking to go to the other side, it was a slower pace. He said that Seydone responded to Complainant that "we management think you can do the work, you're fine." Complainant stated that the other "other side" was a whole new team, different position, who worked in customer service. He stated he believed the calls were slower paced than his current position. He stated he did not submit documentation requesting the accommodation. He stated his request was made verbally to Seydone.

6.    Complainant stated he had no medical restrictions at work.

7.    Complainant stated he had held various positions while employed with Respondent. He stated he was employed by Bank One and was hired into a Customer Service I position. He stated he was later promoted to Customer Service II and then Customer Service III. He sated Respondent rearranged positions and he was transferred to Retention, then to Customer Service Litigation. He stated he was then placed him in a Customer Service Specialist position.

8.   Complainant stated that while employed at Respondent, nobody has ever made a comment to him regarding his disability of manic depression.

9.   Complainant stated he had received an ACE award which is customer advocacy / great customer service experience.

## B. **Respondent's Evidence.**

1.   Linda Brinker ("Brinker") (non-disabled) Executive Director & EEO Case Manager stated that Complainant requested two medical leaves of absences which were approved by Respondent in house disability management services ("DMS"). He also requested intermittent leaves of absence, which DMS also approved. After each leave, Complainant returned to the position he was in prior to his leave. Complainant never provided medical information from his health care providers to request that he be moved to a different position for medical reasons.

2.   Brinker stated that Complainant began his employment with Respondent on May 6, 2002 as a Telephone Banker in Chicago. A year later he transferred to a different position in Elgin, IL. In late 2009 he began working in the collections litigation department as a Customer Support Advisor ("CSA") in Respondent's Card Services business. Complainant began reporting to Team Manager Degauld Seydone ("Seydone") (non-disabled) in or about November 2011. He was reporting directly to Seydone and up to Wendy Freeman during July 2012.

3.   Brinker stated that Complainant's prior positions held, were not promotions she stated that position with a 1,2,3 title, are sequential and you qualify for them and do not need to apply for promotions. Brinker stated that Complainant was transferred to other positions because there was a lot of rearrangement at Respondent since 2008. She stated a unit was eliminated and Respondent tried to place employees into other positions that they qualified for, including Complainant.

4.   Degauld Seydone ("Seydone") (non-disabled) Team Manager indicated that as a Customer Support Advisor ("CSA") in collections litigations, Complainant interacted with credit card customers on inbound and outbound calls to offer payment solutions for resolving account delinquencies. Complainant was responsible for negotiating mutually beneficial payment arrangements to collect on delinquent account balances. Complainant partners with other internal departments, such as bankruptcy, to facilitate customer's debt repayment. Complainant was responsible for understanding and complying with consumer credit and bankruptcy regulations and laws in performing the duties of his position and for maintaining good customer relations.

5.   Brinker stated that if an employee would like to go on a leave, they inform their manager who will then process an online request for a "leave processing" to Respondent's Disability Management Services (DMS)

which is an in-house group that evaluates and administers medical leaves. DMS would sent a packet of forms to the employee and health care provider informs a nurse case manager who would approve or deny a request/ Brinker stated that management would not be privy to the information collected by DMS. She stated management would only be informed of the dates of the approved leave. She stated information submitted by an employee is confidential and not seen by managers. She stated if a healthcare provider provides a request for an accommodation or restrictions, they may share this information with management and Human Resources. To see if an accommodation can be granted and what alternatives are available if accommodation not available. She further stated that management is instructed to never accept medical documentation from employees.

6. Brinker stated that Respondent was not aware that Complainant had a disability.

7. Respondent's Accommodating Disabilities Policy (**Exhibit C**) indicates that Respondent is committed to providing reasonable accommodations to known physical and mental disabilities of qualified applications and employees when needed to apply for a position or to perform the essential job functions. A reasonable accommodation is a change in the work environment or in the way "things are usually done" that enables a qualified person with a disability to perform the essential functions of his or her job and which does not cause an undue hardship to Respondent or involve a significant risk to the health or safety of the individual with a disability or others. The reasonableness of an accommodation and the issues of undue hardship to the firm are evaluated on a case by case basis. If you believe that you have a disability, and need a reasonable accommodation to enable you to perform the essential functions of you job, contact Human Resources. You may be asked to provide medical certification related to your medical condition to the firms Health Services Department or Disability Management Services Department. Any documentation that you provide to the Health Services Department or Disability Management Services Department will be kept confidential and will be retained in a file separate from your personnel records. If you believe that you have been subject to conduct that violates this policy, including any failure to provide a necessary and reasonable accommodation, or have information about or have witnessed any potential violation of this policy, immediately notify Human Resources.

8. Brinker stated that Complainant was aware of how to request a medical leave, as he had taken previous leaves that were approved by Respondent.

9. Brinker stated that in July 2010, Complainant requested a continuous leave of absence for a medical condition. His manager at the time, Corey Jones, opened a leave request for Complainant on Respondent's Leaves Reporting Website. The leave request was transmitted to DMS, Respondent's in house claims administrator for short term disability

Charge No. 2013CF1251
Page 6 of 15

benefits, which asked Complainant and his health care providers to submit medical documentation directly to DMS to support Complainant's leave request. All medical documentation is kept by DMS in confidential medical filed and no medical information is shared with manager or Human Resource Business Partners ("HRBPs"). DMS communicates only when a leave request is approved or denies and if approved the dates of the approved leave. DMS also communicates any requested job restrictions to managers and HRBP's when employees are released to return to work. Complainant first request for a continuous STD leave was approved on July 8, 2010 to September 3, 2010.

10. Karen Kesner ("Kesner") (non-disabled) HRBP stated that Complainant requested a second continuous medical leave of absence. DMS approved his request for leave from March 31, 2011 to July 7, 2011. During this leave, Complainant mentioned to DMS that he found his current position stressful and said that he wanted to transfer to a different job in Chicago to shorten his commute in winter months. DMS advised Complainant that he could look for available positions once his health care providers released him to work. DMS also gave Complainant her name and telephone number, to discuss his request with her after he returned to work. Complainant however never followed up with Kesner on his request for a transfer. Kesner stated that Complainant's managers were aware that Complainant was on an approved medical leave, but they did not know the nature of his medical condition. Complainant never discussed with them a request to transfer to a different position due to a medical condition. Nor did he submit any medical documentation to support a transfer request. Kesner stated that Complainant could also have requested a medical accommodation through Respondent's Health Services Department, which has an occupational health nurse on site in Elgin. He never talked to the onsite nurse about a transfer request for a medical condition. Kesner stated that because Complainant did not produce paperwork from his health care provider requesting a transfer as a reasonable accommodation, DMS did not approve or deny a transfer request. After each leave, Complainant returned to the position he was in prior to the leave.

11. Brinker stated that Complainant submitted medical documentation to support his requests for medical leaves of absence and that the medical documentation identified Complainant's diagnosis as "Bipolar Affective Disorder- Mixed".

12. Brinker stated that Complainant had a two (2) year history of unsatisfactory work performance.

13. Brinker stated that an ACE award which is issued for the quality of a call and not for work performance. She stated one great call can lead to an ACE award.

14. Seydone stated that he never received a request from Complainant to move. He stated Complainant never asked to move to the other side. He

Charge No. 2013CF1251
Page 7 of 15

stated that Complainant never mentioned a disability and he never told Complainant that he didn't care to know of a disability.

15.     Seydone stated that he did not know the reason for Complainant's medical leaves and was therefore unaware of Complainant having a disability.

**C.     Complainant's Rebuttal.**

1.     Complainant stated he felt that he was a great employee.

2.     Complainant's June 22, 2011, medical letter from Dr. Shastri Swantinathan M.D. (**Exhibit D**)[1] indicated that Complainant has been diagnosed with Schizoaffective, bipolar type. He indicated he had been treating Complainant's since the 1980's.

3.     Complainant's February 28, 2012, medical letter from Dr. Shani Chawla, M.D. (**Exhibit E**) indicates that Complainant has been diagnosed with Schizoaffective Disorder.

**Analysis-Count A:**

There is no evidence that in the beginning of July 2012, Respondent failed to accommodate Complainant's disability, manic depression.

There is no evidence that Complainant informed Respondent of a disability of Manic Depression. There is no evidence that Complainant has been diagnosed with a mental disability of Manic Depression. There is no evidence that Complainant informed Respondent of a mental disability, Manic Depression. Complainant's medical documentation indicates that he has been diagnosed with what a doctor referred to as Schizoaffective, bipolar type or schizoaffective disorder as diagnosed by a second physician.

The evidence indicated Respondent's Accommodating Disabilities policy (**Exhibit C**) indicates that the reasonableness of an accommodation and the issues of undue hardship to the firm are evaluated on a case by case basis. If you believe that you have a disability, and need a reasonable accommodation to enable you to perform the essential functions of you job, contact Human Resources. You may be asked to provide medical certification related to your medical condition to the firms Health Services Department or Disability Management Services Department. Any documentation that you provide to the Health Services Department or Disability Management Services Department will be kept confidential and will be retained in a file separate from your personnel records. If you believe that you have been subject to conduct that violates this policy, including any failure to provide a necessary and reasonable accommodation, or have information about or have witnessed any potential violation of this policy, immediately notify Human Resources.

There is no evidence to indicate that Complainant requested an accommodation from Respondent in July 2012.

**Findings and Conclusion-Count A:**

---

[1] Complainant did not return the Department's medical questionnaire; he provided a medical consent form along with medical documentation.

A finding of **Lack of Substantial Evidence** is recommended because:

The evidence shows that Respondent did not fail to accommodate Complainant's disability of Manic Depression on July 2012. There was no evidence to indicate that Complainant was diagnosed with a disability of Manic Depression or that he informed Respondent of such diagnosis. There is no evidence of an animus based on disability.

### Complainant's Allegations-Count B:

Complainant, a former Customer Support Advisor, alleges that on July 12, 2012 Respondent discharged him due to his disability, Manic Depression. Complainant alleges that Respondent hired him in 2002 and performed his duties in a satisfactory manner. Complainant alleges that in the first week of July 2012, Complainant informed Respondent that he had a disability. Complainant alleges that Respondent did not discharge similarly situated non-disabled employees under similar circumstances.

### Respondent's Defenses-Count B:

Respondent's articulated legitimate non-discriminatory reason for discharging Complainant on July 12, 2012 was due to performance issues and not due to an alleged disability. Brinker indicated that Complainant had a history of unsatisfactory job performance. Complainant was provided with regular performance feedback, coached and counseled through documented discussions, and provided a job coach in an attempt to help him succeed in his position. Complainant was placed on written warnings and performance improvement plans, but he failed to show consistent, sustained improvement in his performance. As a result of his continued performance issues, Complainant's employment was terminated for unsatisfactory performance on July 12, 2012. Respondent admits that Complainant began working for Respondent in 2002.Respondent denies that Complainant performed all his duties in a satisfactory manner. Respondent denies that Complainant suffers from a disability, Manic Depression. Respondent denies that similarly situated non-disabled employees were not discharged under similar circumstances.

### Investigation Summary-Count B:

A.      **Complainant's Evidence.**

1.      See Count A, Complainant's Evidence 1-9.

2.      Complainant stated that managers had spoken to him regarding his work performance and indicated to him that he would be fired if he didn't improve his performance. He stated that in June 2012, his supervisor Degauld Seydone ("Seydone") (non-disabled) Team Manager informed him that he worked slowly. Complainant stated that Respondent changed how they evaluated performance so often that he had a hard time keeping up the pace.

3.      Complainant stated that prior to April 2012, he worked really well. He stated that in May and June 2012, he stated that Seydone informed him

that Respondent didn't care what disability he had, but he was going to have a 2nd step. He stated the possibility of being terminated was indicated and that's why he requested to be transferred to another position in July 2012.

4.  Complainant stated that Respondent's performance standards continued to change in June 2012. He stated he was having issues with his performance. He stated he had perfect attendance and showed up to work every day.

5.  Complainant stated that in July 2012, Seydone asked Complainant to meet with him. Complainant stated that Wendy Freeman was present in the meeting. They wanted to talk to him regarding his performance. He informed Complainant that his business wasn't valued anymore. He said Respondent would gather Complainant's things and he would be taken to his car. Complainant stated he had crutches at this time and would need assistance. Complainant stated he was issued a packet with his termination documents.

**B.**   **Respondent's Evidence.**

1.  See Count A, Respondent's Evidence 1-15.

2.  Degauld Seydone ("Seydone") (non-disabled) Team Manager stated he became Complainant's supervisor in November 2011. He stated that Complainant received extensive training throughout his employment at Respondent.

2.  Respondent's copy of Complainant's training transcript (**Exhibit F**) indicates that since January 2004, Complainant had participated in 245 training courses, since 2012 he had participated in 26 courses.

4.  Seydone stated that Complainant's overall work performance was unsatisfactory. He stated Complainant's last annual performance review December 2012. Indicated that he "needs improvement". He stated he took steps to assist Complainant in improving his performance including issuing him Performance Improvement Plans (PIP). He stated he issued Complainant a PIP in January 26, 2012 for 90 days. After the 90 days were over, Complainant's work performance was still unsatisfactory. He stated that in June 14 2012, he issued Complainant a written warning for quality compliance. He stated after June 2012, Complainant's work performance was still unsatisfactory.

5.  Respondent provided documents regarding Complainant's poor performance, as follows:

Charge No. 2013CF1251
Page 10 of 15

| Date | Performance Issues | Exhib |
|------|--------------------|--------|
| 06/19/10 | Employment commitment letter regarding time management and decreasing use of exempt time. Complainant signed the letter. | G |
| 06/30/10 | Written warning for accessing his personal records through Lexis/ Nexis website in violation of company policy re use of the firm's assets. Complainant signed the warning. | H |
| 12/11/10 | Documented discussion for BLP timeframes and charge offs including dates that payments need to post (not acceptable for card member to postdate checks). Complainant signed the document. | I |
| 12/31/10 | 2010 Annual performance rated "Needs improvement: "Complainant continues to show the ability to perform the job but lacks in execution of the behaviors which allow him to achieve the results." | J |
| 02/12/11 | Documented discussion compliance violations. Complainant signed the document. | K |
| 03/18/11 | Meeting record / documented discussion for policy and procedure/ regulatory compliance violations. | L |
| 08/06/11 | Performance improvement plan ("PIP") to help Claimant perform satisfactorily. During a 60 day period Complainant was expected to continue to demonstrate immediate and sustained improvement in overall performance and advised that failure to do so could result in further action up to and including termination. | M |
| 12/07/11 | Documented discussion for policy and procedure/ regulatory compliance violations (called 10 card members out of the time zone). | N |
| 12/12/11 | Focus plan for Complainant to ensure he verified card member identification on inbound calls before beginning calls. Complainant signed the document. | O |
| 12/26/11 | Meeting record/ documented discussion for regulatory compliance violations (called 12 customers out of time zone) | P |
| 12/31/11 | 2011 Annual performance, rated as "Needs improvement" | Q |
| 01/19/11 | Meeting record/ documented discussion for policy and procedure/ regulatory compliance violations (7 time zone occurrences in one day and failing to appropriately update the card member information. | R |
| 01/26/12 | Performance improvement plan ("PIP")." Complainant has not demonstrated significant change and improvement with regard to early and mi-year verbal and written feedback of specific performance deficiencies and with respect to his position in the customer support advisor role. Complainant continues to struggle in his call quality in relation to bank policy and procedures. His main opportunities outlined are updating the card member contact information incorporating the enhanced name and address process, providing misinformation to the card member and reviewing willingness and ability before discussing bank payment programs. Complainant signed the plan. | S |
| 02/06/12 | Written warning for policy and procedure/ regulatory compliance violations (calling out the card members time zone for 8 occurrences in November 2011, 12 occurrences in December 2011 and 7 occurrences in January 2012, failing to correctly update card member contact information, and failure to correctly verify the card members identification on and inbound call. Complainant signed the warning. | T |
| 03/16/12 | Meeting record / documented discussion for setting up two e-pays for the wrong dates. | U |
| 04/30/12 | Meeting record/ documented discussion for providing misinformation to a card member, failing to arc the ST arc appropriately so account documentation is correct, failing to update the card member consent with the primary card member (not the spouse) and contacting a card member who already had a contact arc on the account   (contacting a card member more than once a day can lead to an OCC complain for harassment. | V |
| 05/19/12 | Meeting record / documented discussion for providing misinformation and not following the settlement process. | W |
| 06/11/12 | Meeting record/ documented discussion for numerous regulatory compliance violations. | X |
| 06/14/12 | Written warning for numerous regulatory compliance violations. Complainant signed the warning. | Y |
| 07/12/12 | Recommendation for termination for violating department policy and procedures and regulatory compliance. | Z |

6. Linda Brinker ("Brinker") (non-disabled) Executive Director & EEO Case Manager stated that Respondent was not aware that Complainant had a disability.

7.    Brinker stated that due to Complainant's extensive pattern of poor performance for failing to follow bank policy and procedures and regulatory compliance, Seydone recommended the termination of Complainant's employment. The decision was approved by Team Leader Wendy Freeman ("Freeman") (non-disabled) Team Leader and HRBP Karen Kesner.

8.    Seydone stated that on the date of Complainant's termination, he asked Complainant to meet with him and Freeman. He stated they informed Complainant that he was being terminated and handed him a leave guide. They waited for his items to be collected and he was escorted out because he was on crutches.

9.    Brinker stated that Complainant was given ample time and resources to succeed in his role. Complainant was terminated when his performance failed to show consistent, sustained improvement. She stated that Complainant never attributed his performance issues to his medical condition and never requested a reasonable accommodation that would enable him to perform his essential job duties satisfactorily.

10.   Brinker stated that two (2) former employees D392511 and O054884, where Customer Support Advisors who reported to Team Leader Wendy Freeman and were terminated for unsatisfactory performance. Respondent was unaware if either had a disability.

11.   Respondent's termination documents for employers #D392511 and #O054884 (**Group Exhibit AA**) indicates that #D392511 was terminated on January 16, 2012 due to unsatisfactory performance and employee #O054884 was terminated on June 25, 2012 due to unsatisfactory performance.

C.    **Complainant's Rebuttal.**

1.    Complainant's June 22, 2011, medical letter from Dr. Shastri Swantinathan M.D. (**Exhibit D**)[2] indicated that Complainant has been diagnosed with Schizoaffective, bipolar type.

2.    Complainant's February 28, 2012, medical letter from Dr. Shani Chawla, M.D. (**Exhibit E**) indicates that Complainant has been diagnosed with schizoaffective disorder.

**Analysis-Count B:**

There is no evidence that Respondent discharged Complainant because of his disability, Manic Depression.

---

[2] Complainant did not return the Department's medical questionnaire; he provided a medical consent form along with medical documentation.

Charge No. 2013CF1251
Page 12 of 15

There is no evidence that Complainant informed Respondent of a disability of Manic Depression. There is no evidence that Complainant has been diagnosed with a mental disability of Manic Depression. There is no evidence that Complainant informed Respondent of a mental disability, Manic Depression. Complainant's medical documentation indicates that he has been diagnosed with what a doctor referred to as Schizoaffective, bipolar type or schizoaffective disorder as diagnosed by a second physician.

The evidence indicated that Complainant has had issues with poor work performance from June 2010 until his termination July 12, 2012, as documented by Respondent (**Exhibits G-Z**).

The evidence indicated that Complainant was terminated on July 2012 due to poor work performance.

The evidence revealed Respondent's termination documents for employers D392511 and O054884 (**Group Exhibit AA**) indicates that D392511 was terminated on January 16, 2012 due to unsatisfactory performance and employee O054884 was terminated on June 25, 2012 due to unsatisfactory performance.

### Findings and Conclusion-Count B:

A finding of **Lack of Substantial Evidence** is recommended because:

The evidence shows that on September 8, 2010, Respondent discharged Complainant for poor work performance. The evidence indicated that from June 2010 until Complainant's termination, he has received 17 documented notices of his poor work performance. The evidence indicated that Respondent terminated other employees (disability unknown) for poor work performance. There was no evidence to indicate that Complainant was diagnosed with a disability of manic depression or that he informed Respondent of such diagnosis. There is no evidence. There is no evidence of an animus based on disability.

### Witness List:

    A.    Complainant               (FFC)
           C/o Arthur R. Ehrlich
           Goldman & Ehrlich
           20 S. Clark St., Suite 500
           Chicago, IL 60603
           (312) 332-6733

    B.    Arthur R. Ehrlich          (FFC)
           Complainant's attorney
           Goldman & Ehrlich
           20 S. Clark St., Suite 500
           Chicago, IL 60603
           (312) 332-6733

    C.    Linda Brinker (non-disabled)     (FFC)
           Executive Director & EEO Case Manager
           Employment Law Practice Group,

JP Morgan Chase and Co.
10 S. Dearborn
Chicago, IL 60603
(312)-325-3550

D.    Kristi Heflin (non-disabled)      (FFC)
EEO Case Specialist
C/o Linda Brinker
Executive Director & EEO Case Manager
Employment Law Practice Group,
JP Morgan Chase and Co.
10 S. Dearborn
Chicago, IL 60603
(312)-325-3550

E.    Karen Kesner (non-disabled)      (FFC)
HRBP
C/o Linda Brinker
Executive Director & EEO Case Manager
Employment Law Practice Group,
JP Morgan Chase and Co.
10 S. Dearborn
Chicago, IL 60603
(312)-325-3550

F.    Wendy Freeman (non-disabled)      (FFC)
Team Leader
C/o Linda Brinker
Executive Director & EEO Case Manager
Employment Law Practice Group,
JP Morgan Chase and Co.
10 S. Dearborn
Chicago, IL 60603
(312)-325-3550

G.    Degauld Seydone (non-disabled)      (FFC)
Team Manager
C/o Linda Brinker
Executive Director & EEO Case Manager
Employment Law Practice Group,
JP Morgan Chase and Co.
10 S. Dearborn
Chicago, IL 60603
(312)-325-3550

## Exhibits:

A.    Respondent's Verified Response and the Department's Notice to Show Cause worksheet.

B.      Respondent's 2012 EEO Report.

C.      Respondent's accommodating disabilities survey.

D.      Complainant's June 22, 2011, medical letter from Dr. Swantinathan.

E.      Complainant's February 28, 2012, medical letter from Dr. Chawla.

F.      Respondent's copy of Complainant's training transcript.

G.      Respondent's June 19, 2010, employment commitment letter to Complainant.

H.      Respondent's June 30, 2010, written warning to Complainant.

I.      Respondent's December 11, 2010, documented discussion for Complainant.

J.      Respondent's December 31, 2010, annual evaluation for Complainant.

K.      Respondent's February 12, 2011, documented discussion for Complainant.

L.      Respondent's March 18, 2011, meeting record for Complainant.

M.      Respondent's August 6, 2011, performance improvement plan for Complainant.

N.      Respondent's December 7, 2011 documented discussion for Complainant.

O.      Respondent's December 12, 2011 focus plan for Complainant.

P.      Respondent's December 26, 2011 meeting record for Complainant.

Q.      Respondent's December 31, 2011, annual performance review for Complainant.

R.      Respondent's January 19, 2011 meeting record for Complainant.

S.      Respondent's January 26, 2012 performance improvement plan for Complainant.

T.      Respondent's February 6, 2012, written warning for Complainant.

U.      Respondent's March 16, 2012, meeting record for Complainant.

V.      Respondent's April 30, 2012, meeting record for Complainant.

W.      Respondent's May 19, 2012, meeting record for Complainant.

X.      Respondent's June 11, 2012, meeting record for Complainant.

Y.      Respondent's June 14, 2012 written warning for Complainant.

STATE OF ILLINOIS     )
                         ) ss

COUNTY OF COOK     )                  FILE NO (S)  2013CF1251

## AFFIDAVIT OF SERVICE

Benetta M. Davies, deposes and states that she served a copy of the attached

**NOTICE OF DISMISSAL FOR LACK OF SUBSTANTIAL EVIDENCE** on each person

named below by depositing same this 25th day of February, 2014, in the U.S. Mail Box

at 100 West Randolph Street, Chicago, Illinois, properly posted for FIRST CLASS MAIL,

addresses as follows:

---

Arthur R. Ehrlich
Goldman & Erlich
20 S. Clark Street
Suite 500
Chicago, IL 60603

Linda Brinker, Executive Director
JP Morgan Chase and Co.
10 S. Dearborn
Chicago, IL 60603

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

Benetta M. Davies

## PLEASE NOTE:

The above-signed person is responsible only for mailing these documents. If you wish a review of the findings in this case you must complete the Request for Review form attached. Department staff are not permitted to discuss the investigation findings once a Notice of Dismissal has been issued.



ILLINOIS DEPARTMENT OF
# Human Rights

Pat Quinn, Governor
Rocco J. Claps, Director

**CONSENT FOR INSPECTION AND COPYING OF MEDICAL INFORMATION**

Date: __August 22, 2013__          Complainant: __Joseph W. Moreno__

IDHR Charge No. 2013CF1251__

To Whom It May Concern:

I have filed the above-captioned charge of unlawful discrimination in (employment) (public accommodations) (real estate transactions) (financial credit) in which my physical or mental condition is an issue. I hereby authorize that all medical information pertaining to my medical condition(s) of **Manic Depression**, including any information about reasonable accommodation(s) I might require to perform my job duties in possession of the following **medical authority/facility/physician**:

**Name:**_____

**Address:**_____

**Telephone No.:**_____

may be released to the Department of Human Rights, 100 West Randolph, Suite 10-100, Chicago, IL 60601 to the attention of:

**Investigator Name:** __Erika G. Ayala__          **Telephone No.** __312-814-1991__

If there is a fee for a file search and/or copying, I am responsible for the charges, and not the Department of Human Rights.

Further, I understand and consent that this information will become part of the Department's investigation file and as such may be reviewed by personnel of the Department, as well as the Illinois Human Rights Commission, the United States Equal Employment Opportunity Commission, the United States Department of Housing and Urban Development, the Respondent, and pursuant to subpoena and/or court order.

I understand that I have the right to revoke this Consent at any time in writing, signed by me, with my signature witnessed by a person who can attest to my identity. I understand that no written revocation of this Consent can prevent disclosure of records and communications until the person otherwise authorized to disclose records and communications receives it.

I further understand that if I refuse to consent to the disclosure of this medical information. my charge may be dismissed.

This Consent Form shall expire on (date): __August 22, 2014__ .

_Joseph Wayne Moreno_                          _8/22/2013_
Signature of Patient or other person entitled to give consent:          Date:

**Patient's Name:** __Joseph W. Moreno__

**Patient's Date of Birth:** _02/02/1954_

**Address:** _5105 N Addison St 3W_

**City, State, Zip Code:** _Chicago, IL 60641_

**Witnessed by** _Gene P Bond w_ who can attest to the identity of the Patient or other person entitled to give consent.

**Witness signature** _____

Form 10 01/09

**Chicago Physician Associates, LLC**
Shastri Swaminathan, M.D.
938 W. Nelson St. First Floor
Chicago, IL 60657
Phone: (773) 883-0200          Fax: (773) 883-0090

June 22, 2011

**RE:** Moreno, Joseph

Joe is seen today two weeks after his last visit on June 07th, consistent improvement. Even though he sleeps a little bit more with Trilafon there is a remarkable change. He looks calm, relaxed. His speech is not pressured. No overt paranoid thoughts. He is still unhappy about the fact that he has not been able to renegotiate with his brother. He and his sister are also estranged, although he is very close to his nephew who is a young man. This is a rather difficult patient whom I have been seeing since the late 80s hospitalization at Ravens he has come a long way. Schizoaffective, bipolar type. He has really shown improvement in the past month consistently. He brought up the issue of going back to work. I had originally asked for disability to continue through the summer mostly because I was concerned about my leaving the practice, transition to a new doctor. I feel comfortable at this point at least try to have him go back to work next week. He started to exercise again, going to gym. Situation with his girlfriend seems to be better. He is seeing a therapist, I think this has been a big help. He is currently working for a Collection Litigation Support Center at Chase Bank. He did very well at the Customer Service part of the bank in the past. I would write a letter to the company in terms of release to go back to work. Medications reviewed. Trilafon 32 mg at bedtime, lithium carbonate 600 mg b.i.d. He was concerned about the diarrhea, but when I talked to him in detail he actually has blood in his stools. He has been advised to have a colonoscopy which he has not followed through. Tegretol 400 mg q.12h., lithium 600 mg b.i.d.; lithium level was obtained and Wellbutrin 150 mg twice a day.

Shastri Swaminathan, M.D.
SS/RS/kr
Dictated:  06-23-11
Typed:     06-24-11

**Chicago Physicians Associates LLC**
Shalini Chawla MD
938 W Nelson St, First Floor
Chicago, IL 60657
Phone: (773) 883-0200          Fax: (773) 883-0090

**Date:** 2/28/2012

**RE:** Joseph Moreno, DOB: 7/6/1959

Pt was seen for follow up visit today. He reports he has been seeing the therapist at his work under the EAP program. He states she has give him some tools to deal with stress and also asked him to read "the power of now". He reports he has been doing better at work, remembering the things he needs to do but still sometimes has difficulty keeping track of the time. He also c/o some jerking movements after increasing his lithium. He stated he had diarrhea when he took 600 mg in the morning so he is now taking 300 mg qam and 900 mg qhs.

**Current Medications:** Trilafon 32 mg po qhs, Tegretol 400 mg po bid, Wellbutrin 300 mg po qam, Lithium 600 mg bid.

**Mental Status Examination:** Pt is a 52 y/o HM dressed in business attire with fair grooming and hygiene, fair eye contact, slightly intense affect. His mood is irritable with constricted affect, congruent to mood. He denies hallucinations and paranoid delusions were noted. He denies suicidal or homicidal ideations. Insight and judgment are poor Cognition is grossly intact.

**Assessment:** Pt is a 52 y/o HM with h/o Schizoaffective disorder (295.70). We will continue his current medications and he will continue to take Lithium 300 mg po qam and 900 mg po qhs and Cogentin 1 mg bid. He will return for follow up in 1 month.

Shalini Chawla MD

**Chicago Physicians Associates LLC**
Shalini Chawla MD
938 W Nelson St, First Floor
Chicago, IL 60657
Phone: (773) 883-0200          Fax: (773) 883-0090

**Date:** 3/27/2012

**RE:** Joseph Moreno, DOB: 7/6/1959

Pt was seen for follow up visit today. He reports he has been still having difficulty concentrating and focusing. He states in the afternoons he feels tired and lazy. He reports he is forgetful at times and even though he has notecards and writes things down he still sometimes forgets things when making calls at work. We discussed changing his wellbutrin to twice a day. He has improved at work and states that he received an award last month for his work. He is still anxious and has been compliant with his medications.

**Current Medications:** Trilafon 32 mg po qhs, Tegretol 400 mg po bid, Wellbutrin 300 mg po qam, Lithium 300 mg qam and 900 mg qhs.

**Mental Status Examination:** Pt is a 52 y/o HM dressed in business attire with fair grooming and hygiene, fair eye contact, slightly intense affect. He is slightly hyperverbal and no abnormal movements were noted. His mood is anxious with congruent affect. He denies hallucinations and paranoid delusions were noted. He denies suicidal or homicidal ideations. Insight and judgment are fair. Cognition is grossly intact.

**Assessment:** Pt is a 52 y/o HM with h/o Schizoaffective disorder (295.70). We will continue his current medications and he will continue to take Lithium 300 mg po qam and 900 mg po qhs and Cogentin 1 mg bid. He will return for follow up in 1 month.

Shalini Chawla MD

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form. | AGENCY<br>☒ IDHR<br>☐ EEOC | CHARGE NUMBER |
|---|---|---|

### Illinois Department of Human Rights and EEOC

| NAME (indicate Mr. Ms. Mrs.)<br>Mr. Joseph W. Moreno | HOME TELEPHONE (include area code)<br>(312) 560-2298 | |
|---|---|---|
| STREET ADDRESS<br>5105 W Addison St, Apt 3W | CITY, STATE AND ZIP CODE<br>Chicago, IL 60641 | DATE OF BIRTH<br>07/05/1959 |

**NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)**

| NAME<br>JP Morgan Chase | NUMBER OF EMPLOYEES.<br>MEMBERS 15+ | TELEPHONE (include area code)<br>(847) 488-5646 |
|---|---|---|
| STREET ADDRESS<br>2500 Westfield Dr | CITY, STATE AND ZIP CODE<br>Elgin, IL 60124 | COUNTY<br>KANE |
| NAME | TELEPHONE (include area code) | |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON:<br>I. Discrimination and Discharge based on Disability<br>II. Refusal to Accommodate Disability. | DATE OF DISCRIMINATION<br>EARLIEST (ADEA/EPA) LATEST (ALL)<br>/ /      7/12/2012<br>☐ CONTINUING ACTION |
|---|---|

**THE PARTICULARS ARE (If additional space is needed attach extra sheets)**

*** SEE ATTACHED ***

Dept of Human Rights
INTAKE UNIT
NOV 02 2012
RECEIVED

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME ON THIS<br>11-2.12<br>NOTARY SIGNATURE      MONTH DATE-YEAR |
|---|---|
| NOTARY SEAL | X _Joseph W Moreno_ 11.2.12<br>SIGNATURE OF COMPLAINANT      DATE<br>I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |

FORM 5 (5/05)

**CHARGE OF DISCRIMINATION**

*Mr Joseph W Moreno and JP Morgan Chase*

The Particulars Are:

I.  A.  ISSUE/BASIS

Discrimination and Discharge based on Complainant's Disability

B.  PRIMA FACIE ALLEGATIONS

1.  On September 12, 2012, Complainant filed a charge of discrimination with the United States Equal Employment Opportunity Commission. The basis of this charge was disability discrimination. On September 17, 2012, the EEOC completed its investigation of this charge.

2.  Complainant began working for Respondent in 2002 and performed all his duties in a satisfactory manner.

3.  Complainant suffers from a disability, manic depression.

4.  In June 2012, Respondent transferred Complainant to its collections department.

5.  In or about the first week of July 2012, Complainant informed his supervisor that he had a disability. Complainant requested an accommodation, to be transferred to a different department or position that would not be as fast paced and would be less mentally strenuous.

6.  Respondent, through Complainant's supervisor, told Complainant to keep his disability to himself. The supervisor also told Complainant his work was fine. No transfer was given or considered for Complainant.

7.  Complainant also requested additional training, but did not receive adequate training.

8.  Respondent terminated Complainant on July 12, 2012, claiming that his performance was not adequate, though Respondent had recently told Complainant his work was fine.

9.  Respondent terminated Complainant because of his disability.

II.    A.    ISSUE/BASIS

Refusal to accommodate Complainant's disability, causing Complainant's Termination

B.    PRIMA FACIE ALLEGATIONS

1.    On September 12, 2012, Complainant filed a charge of discrimination with the United States Equal Employment Opportunity Commission. The basis of this charge was disability discrimination. On September 17, 2012, the EEOC completed its investigation of this charge.

2.    Complainant began working for Respondent in 2002 and performed all his duties in a satisfactory manner.

3.    Complainant suffers from a disability, manic depression.

4.    In June 2012, Respondent transferred Complainant to its collections department.

5.    In or about the first week of July 2012, Complainant informed his supervisor that he had a disability. Complainant requested an accommodation, to be transferred to a different department or position that would not be as fast paced and would be less mentally strenuous.

6.    Respondent, through Complainant's supervisor, told Complainant to keep his disability to himself. The supervisor also told Complainant his work was fine.

7.    Complainant also requested additional training, but did not receive adequate training.

8.    Respondent terminated Complainant on July 12, 2012, claiming that his performance was not adequate.

9.    Respondent violated Complainant's rights by refusing to accommodate his disability.

10.    Instead of accommodating Complainant, Respondent terminated him.